UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN RODRIGUEZ,<br>Plaintiff,<br>v.<br>MICROSOFT CORPORATION, *et al.*,<br>Defendants. | Case No. 1:26-cv-01557-CDB<br><br>ORDER GRANTING DEFENDANTS MICROSOFT CORPORATION AND MOJANG AB'S REQUEST TO SEAL DOCUMENTS<br><br>(Doc. 17)<br><br>ORDER GRANTING DEFENDANTS MICROSOFT CORPORATION AND MOJANG AB'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS<br><br>(Doc. 18)<br><br>**5-Day Deadline** |

Pending before the Court is the motion of Defendants Microsoft Corporation ("Microsoft") and Mojang AB[1] ("Mojang") to compel arbitration and stay proceedings and notice of request to seal documents in support thereof, filed on June 12, 2026.[2] (Docs. 17, 18). Plaintiff Ethan Rodriguez ("Plaintiff") filed an opposition on June 25, 2026, and Defendants Microsoft and Mojang filed their reply on July 13, 2026. (Docs. 26, 31). Defendants Microsoft and Mojang filed four (4) notices of supplemental authority in support of their motion. (Docs. 35, 36, 37, 39). On July 10,

[1] Mojang AB was erroneously sued as Mojang Studios. *See* (Doc. 18 at 2).

[2] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Christopher D. Baker for all purposes. (Doc. 13).

2026, the Court deemed the motion suitable for disposition without hearing or oral argument and vacated the motion hearing set for July 17, 2026. (Doc. 30). For the reasons set forth herein, the Court will grant Defendants Microsoft and Mojang's motion to compel arbitration and stay proceedings.

## I. Relevant Background

### A. Factual Background

Plaintiff initiated this action with the filing of a complaint in state court on January 21, 2026, against Defendants Microsoft, Mojang, and Epic Games Inc. ("Epic") (collectively, "Defendants") before Microsoft removed the case to this Court on February 23, 2026.[3] (Doc. 1).

Plaintiff began playing Defendants' video game products when he was about 12 years of age and has used and/or continues to use Defendants' products "at an increasing, uncontrollable, compulsive, and/or addictive pace." (Doc. 1-1 ¶ 11). Plaintiff seeks damages, alleging that his video game addiction from use of Defendants' video game products has resulted in mental, physical, and economic injuries, "including diminished social interactions, lack of interest in other hobbies, withdrawal symptoms such as rage, anger, and physical outbursts." *Id.* ¶¶ 4-9. Plaintiff alleges that Defendants' video games have addictive features, that Defendants failed to warn users of the known risks of addiction and harm associated with their video games, and that Defendants engage in misrepresentations regarding the safety of the video games. *See id.* ¶¶ 84-99, 111-21, 151-218.

Plaintiff alleges he "never entered into a valid contract with any of the Defendants, and/or to the extent any Defendant claims [he] attempted to accept an electronic terms and condition clause by clicking buttons on a screen which included language Plaintiff did not understand, read, or which was conscionable, it has been made void by virtue of its unconscionability." *Id.* ¶ 59. He further alleges that "to the extent that any Defendant claims Plaintiff entered into a contract, any terms to which Plaintiff agreed are void and unenforceable. Each Defendant's terms of service or terms and conditions clauses are contracts of adhesion and have no variation or negotiable terms prior to the

[3] Epic filed a pending motion to compel arbitration or, in the alternative, to transfer to the Eastern District of North Carolina, which the Court will address by separate order. (Doc. 20).

signing of parties." *Id.* ¶ 60.

Plaintiff asserts claims for strict product liability, negligence, and violations of California's Unfair Competition Law ("UCL") against Defendants. *Id.* at 37-64.

**B. Microsoft Services Agreement**

To play Xbox games, a user must first create a Microsoft account and then create an associated Xbox account. (Doc. 18-2, Declaration of Juliamarie Abbott ("Abbott Decl.") ¶¶ 3-4). Since August 2015, all users who create these accounts must click to agree to the MSA to complete the account-creation process. *Id.* ¶ 5. The screen to agree to the MSA informs users that "Choosing Next means that you agree to the [MSA,]" which is distinguished in a hyperlinked, blue-colored font that displays the full MSA once clicked. *Id.*

The MSA includes an arbitration clause requiring arbitration of all disputes concerning the covered "Services" and is titled under the MSA in bold capital text:

> **IF YOU LIVE IN . . . THE UNITED STATES, PLEASE READ THE BINDING ARBITRATION CLAUSE . . . IN SECTION 15. IT AFFECTS HOW DISPUTES ARE RESOLVED.**

*See* (Doc. 18-3, Declaration of Michael Scari ("Scari Decl.") Ex. A). The opening page of the MSA provides a "Summary of Arbitration Provisions" with a blue hyperlink to Section 15 of the arbitration provision:

> **15. Binding Arbitration and Class Action Waiver If You Live In . . . the United States**. We hope we never have a dispute, but if we do, you and we agree to try for 60 days, upon receipt of a Notice of Dispute, to resolve it informally. If we can't, you and we agree to **binding individual arbitration before the American Arbitration Association ("AAA") under the Federal Arbitration Act ("FAA"), and not to sue in court in front of a judge or jury**.

*Id.* § 15. "'[D]ispute' is defined as broad as it can be. It includes any claim or controversy between you and us concerning the Services, the software related to the Services, the Services or software's price, your Microsoft account, marketing, communications, your purchase transaction, billing, or these Terms, under any legal theory including contract, warranty, tort, statute, or regulation, except disputes relating to the enforcement or validity of your, your licensors', our, or our licensors' intellectual property rights." *Id.* § 15(a). This provision applies to disputes between users and

"Microsoft and Microsoft's affiliates[.]" *Id.* § 15. "Services" include "Minecraft games" and various Xbox services, including Xbox Cloud gaming, Xbox Game Pass, Xbox Live, and the Xbox Store. *Id.*, "Covered Services." The MSA provides instructions for rejecting changes to the arbitration agreement. *See* Scari Decl. ¶ 8 & Ex. A § 15(f).

Section 7 of the MSA provides that users agree to be bound by future changes to the MSA after Microsoft provides notice, including by notices emailed to the user's registered email address before the update's effective date. *See id.* § 7(a); Scari Decl. ¶¶ 4-5 & Exs. I (2025 MSA Update Email), J (2024 MSA Update Email). Microsoft also alerts users of changes to the MSA via "interrupt" notices that pop-up on the user's screen stating that Microsoft has updated the MSA and providing a link to the full text of the MSA labeled "Learn More." *Id.* ¶ 6 & Ex. K. The user must acknowledge and click the notice to dismiss the interrupt notice and proceed to use the Services. Scari Decl. ¶ 6.

Section 4 of the MSA sets forth how the MSA's terms may be agreed to in the case of a minor user. Scari Decl. Ex. A § 4(a)(iii). The "Kids and Accounts" heading of Section 4(a)(iii) provides that "[b]y creating a Microsoft account or using the Services, you accept and agree to be bound by these Terms[.]" *Id.* The user must "represent that [they] have either reached the age of 'majority' where [they] live or [their] parent or legal guardian agrees to be bound by these Terms on [their] behalf" and directs minors to ask their" parent or legal guardian for help[.]" *Id.*

## II. <u>Governing Authority</u>

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce and "governs the allocation of authority between courts and arbitrators." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); 9 U.S.C. § 2. The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "create[s] a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA establishes "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp v. Lewis*, 584 U.S. 497, 505 (2018) (quotation and citation

omitted); *see Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (Congress enacted the FAA "to replace judicial indisposition to arbitration"). A party seeking to enforce an arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

A court may grant a motion to compel arbitration only upon resolution of two "gateway" questions: (1) "whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Because the FAA "is phrased in mandatory terms," "the standard for demonstrating arbitrability is not a high one, [and] a district court has little discretion to deny an arbitration motion." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). Still, a court may compel arbitration only when there is a "clear agreement" to arbitrate between the parties. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092–93 (9th Cir. 2014) (citations omitted). "When determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that govern contract formation." (*Id.* at 1093) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)). "If the court finds a valid arbitration agreement exists, the court must order the parties to proceed to arbitration in accordance with the terms of the agreement." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024) (internal citation and quotation omitted).

Gateway issues such as validity and arbitrability may be delegated to the arbitrator. *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010)); *Bennett v. Anheuser-Busch Commercial Stratefy, LLC,* No. 2:22-cv-01239-MCE-KJN, 2024 WL 1241916, at *4 (E.D. Cal. Mar. 22, 2024). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. As a result, arbitration should only be denied when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

It is well-established that "arbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011 (9th Cir. 2004). However, the presumption in favor of arbitration applies only when determining the scope of arbitrable *issues* but not which *parties* agreed to arbitrate. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995) (holding the presumption for arbitration "reverses" when determining whether certain parties are subject to arbitration in cases of "silence or ambiguity"). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Kaplan*, 514 U.S. at 939 (internal quotation and citation omitted).

In evaluating a motion to compel arbitration, the district court must apply the summary judgment standard outlined in Federal Rule of Civil Procedure 56. *See Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831 (9th Cir. 2022); *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). "The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen*, 1 F.4th at 670 (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the existence of an arbitration agreement. *Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1110 (E.D. Cal. 2023).

"When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024) (citing 9 U.S.C. § 3) (providing that, when any issue in a suit is subject to arbitration, the court shall stay the action upon request by a party until arbitration is completed).

///

///

**III. Notice of Request to Seal Documents**

Defendants Microsoft and Mojang request[4] the Court seal documents filed in connection with their motion to compel arbitration and stay proceedings (Doc. 17), filed and emailed to the undersigned's chambers on June 12, 2026, along with their proposed order and the documents sought to be sealed. Defendants Microsoft and Mojang request the Court seal unredacted copies of the following documents: (1) their motion to compel arbitration and stay proceedings; (2) the declaration of Michael Scari in support thereof; (3) the declaration of Juliamarie Abbott in support thereof; and (4) the declaration of Jay Bhimani in support thereof. (Doc. 17 at 2). Microsoft and Mojang represent that these documents contain sensitive personal information associated with Plaintiff's Microsoft and Xbox accounts, specifically, his email addresses, accountholder names, usernames/gamertags, physical addresses, payment information, and dates of birth. *Id.* Microsoft and Mojang represent that they have submitted redacted versions of these documents for the public record and seek leave to file the unredacted versions under seal. *Id.*

The Court has considered the factors set forth in *Oregonian Publ'g Co. v. U.S. Dist. Court for Dist. of Or.*, 920 F.2d 1462 (9th Cir. 1990). The Court finds that, for the reasons stated in Microsoft and Mojang's request, sealing the documents serves a compelling interest and that, in the absence of closure, the compelling interests would be harmed. In light of the public filing of the redacted documents (*see* Docs. 18; 18-1; 18-2-; 18-3), the Court further finds that there are no additional alternatives to sealing the documents that would adequately protect the compelling interests.

Accordingly, pursuant to Local Rule 141 and based upon the representations contained in Defendants Microsoft and Mojang's unopposed notice and request (Doc. 17), the Court will order that the unredacted filings of Microsoft and Mojang's motion to compel arbitration and stay proceedings and the declarations of Michael Scari, Juliamarie Abbott, and Jay Bhimani in support thereof shall be sealed until further order of this Court.

///

///

---

[4] Plaintiff does not oppose the request to seal. *See* (Doc. 17 at 2).

## IV. <u>Discussion</u>

Defendants Microsoft and Mojang move under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, for an order compelling arbitration of Plaintiff's claims based on his use of Microsoft's Xbox services to play Minecraft and other video games and staying the instant proceedings pending completion of the arbitration. (Doc. 18 at 2). Microsoft and Mojang contend Plaintiff agreed to the terms of the MSA by creating Microsoft and Xbox accounts required to access Xbox services to play games and, after reaching the age of majority, repeatedly reaffirmed his assent to the MSA by continuing to use his accounts, even after notice of updated terms. *Id.* at 7; *see* Scari Decl. ¶¶ 4-7 & Ex. A § 4(a)(iii); (Doc. 18-3, Declaration of Jay Bhimani ("Bhimani Decl.") ¶ 3). Under the MSA, Plaintiff agreed that "any claim or controversy between" him and Microsoft concerning Microsoft's services is subject to binding arbitration pursuant to the FAA. Scari Decl. Ex. A § 15(a).

Plaintiff argues that compelling arbitration in this case would be improper because (1) Plaintiff was a minor at the time he entered into the MSA and the contract is therefore unenforceable, (2) the MSA is unenforceable as procedurally and substantively unconscionable, and (3) even if the MSA is enforceable, compelling arbitration to the AAA would be fundamentally unfair and would prejudice Plaintiff's right to due process given the AAA is "biased in favor of corporate parties and defendants" and if compelling arbitration is appropriate, the Court should compel arbitration to an arbitrator other than the AAA. (Doc. 26 at 7).

Microsoft and Mojang contend in reply that Plaintiff's arguments that the MSA is unenforceable and that his assent was "somehow invalid" fail because the MSA is an enforceable clickwrap agreement that Plaintiff cannot show is unconscionable, Plaintiff has since agreed to the MSA as an adult, and California law does not support his contention that his alleged video game addiction invalidated his assent. (Doc. 31 at 6).

The parties do not contest the FAA's applicability over the arbitration agreement at issue here. *See* (Doc. 18 at 13); (Doc. 26 at 14) ("The enforceability of Defendant's arbitration agreement … must be evaluated under the [FAA.]"). Therefore, the Court follows the FAA's two-step inquiry in ruling on Defendants Microsoft and Mojang's motion to compel arbitration and stay

the proceedings.

**A. Analysis – Validity of Arbitration Agreement**

First, in determining whether to grant Microsoft and Mojang's motion to compel arbitration, the Court considers the initial "gateway" question—whether there is an agreement to arbitrate between the parties. *Brennan*, 796 F.3d at 1130. "When determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that govern contract formation." *Davis*, 755 F.3d at 1093 (citation omitted). Here, the parties do not dispute that California law governs the contracts at issue. *See* (Doc. 18 at 14); (Doc. 26 at 11). To form a contract under California law, the parties must mutually assent to the terms of the agreement. *Berman*, 30 F.4th at 855. "Section 6700 of the California Family Code permits a minor to make a contract 'in the same manner as an adult,' subject to the power of disaffirmance and other exceptions that do not apply in this case." *Williams v. Moon Active Ltd.*, 811 F. Supp. 3d 1079, 1083 (N.D. Cal. 2025) (citing Cal. Fam. Code § 6700).

Here, Microsoft and Mojang show that Plaintiff created the Microsoft and Xbox accounts at issue—through the account-creation process explained *supra* (Section I.B; *see* Abbott Decl. ¶¶ 4-5)—on February 27, 2019, prior to reaching the age of majority in 2024, and has used the accounts since to play games. *See* Abbott Decl. ¶ 7(a) (identifying information regarding Plaintiff's Xbox account); Bhimani Decl. ¶ 3. Plaintiff has used his Xbox account as recently as March 2026 to play both Fortnite and Minecraft and used the credit card on file—which is in Plaintiff's name—to make a Fortnite-related purchase. *Id.* ("The account was used to play Fortnite as recently as March 16, 2026, and Minecraft as recently as March 4, 2026."). Plaintiff does not dispute that he continues to play video games with his Xbox account after he reached majority-age in 2024, and following the filing of his complaint in January 2026. *See* (Doc. 1-1 at 5 ¶ 11) ("Plaintiff has used and/or continues to use Defendants' Products[.]"); Bhimani Decl. ¶ 3. Nor does Plaintiff dispute that he acknowledged, among other notices, an MSA update interrupt notice on December 24, 2025, to continue to access and use his Xbox account. Scari Decl. ¶¶ 4-7(a) & Exs. I-K; Abbott Decl. ¶ 7(a). The evidence indicates that a valid agreement to arbitrate exists. Microsoft and Mojang have established that Plaintiff entered into an agreement to arbitrate disputes regarding Microsoft's

products. *See id.*; Scari Decl. Ex. A § 4(a)(iii); Bhimani Decl. ¶ 3.

Plaintiff's argument that the contract is invalid because he was a minor when he entered agreement to arbitrate is unavailing. Plaintiff may "have been a minor when he entered the agreement to arbitrate for the first time, but … he was an adult when he reaffirmed the agreement" on later occasions. *Compton v. Sony Ent. Interactive LLC*, No. 1:26-cv-04076-KES-EGC, 2026 WL 3169643, at *2 n.3 (E.D. Cal. Oct. 22, 2026); *see id.* ("If Compton reaffirmed the arbitration agreement after becoming an adult that could establish his ratification of the agreement.") (citing *Coughenour v. Del Taco, LLC*, 271 Cal. Rptr. 3d 602, 608 (Cal. Ct. App. 2020)). Although a minor may disaffirm a contract he entered into before reaching majority-age or within a reasonable time afterwards (Doc. 26 at 12), here, Plaintiff offers no substantive argument or facts demonstrating that he disaffirmed the MSA when he was a minor, after he reached majority age in 2024, or after he filed his complaint in January 2026. *Cf. Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1037-38 (N.D. Cal. 2020) (finding minor-plaintiff validly disaffirmed agreement to arbitrate by sending a letter to the video game creator asserting the minor's right to disaffirm contracts, by filing a complaint seeking declaratory judgment regarding his right to disaffirm the contract and conveying intent to repudiate the contract, and because "plaintiff has disaffirmed the EULAs in their entirety, including by not playing *Fortnite.*"); *T. K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200, at *6 (N.D. Cal. Apr. 17, 2018) ("T.K. has disaffirmed the entire renewal agreement. There is ... no evidence that T.K. continues to use ACCP …. In these circumstances, the Court sees no basis to enforce the arbitration … terms of a contract that is now a 'nullity.'"); *R.A. v. Epic Games, Inc.*, No. CV 19-1488-GW-Ex, 2019 WL 6792801, at *7 (C.D. Cal. July 30, 2019) (finding although plaintiff continued to play *Fortnite* after filing he complaint, plaintiff disaffirmed agreement to arbitrate by submitting a declaration conveying his disaffirmance and there was no evidence he continued playing *Fortnite* after submitting the declaration). Indeed, Plaintiff's continued use of Microsoft and Mojang's products following the filing of his complaint demonstrates his manifestation of his intent *not* to disaffirm the contract. *See, e.g.*, *C.M.D. ex rel. v. De Young v. Facebook, Inc.*, 621 Fed. Appx. 488, 489 (9th Cir. 2015) ("Plaintiffs did not disaffirm their contract under § 6710…. By continuing to use facebook.com after bringing their

action, Plaintiffs manifested an intention not to disaffirm the contract."); *Y.H. v. Blizzard Ent., Inc.*, No. 30-2022-01257732-CU-BT-CXC, 2025 WL 1331952, at *6 (Super. Ct. Cal. May 1, 2025) ("While the 'filing of a lawsuit is sufficient disaffirmance' … Y.H.'s continued use of Blizzard accounts while this action has been pending, including her creation and use of a new account to play *Overwatch 2* while litigating her claimed disaffirmance, manifests an intention not to disaffirm the EULA."). Therefore, Plaintiff's arguments regarding disaffirmance fail to show an agreement to arbitrate does not exist here.

Plaintiff's argument that the contract is voidable because he entered into the MSA while he was a minor, became addicted to Microsoft and Mojang's services, and was therefore under duress when he reached majority-age, does not change this outcome. To begin with, a "voidable" contract is not void, but rather, permits disaffirmance (which did not occur here). Separately, Plaintiff cites no cases and no other authority that gaming addiction acquired prior to reaching majority-age constitutes duress sufficient to void a contract.

Thus, the Court finds that a valid agreement to arbitrate exists between the parties. *Brennan*, 796 F.3d at 1130. The Court turns to whether the arbitration agreement is enforceable as to Plaintiff's claims. *Id.*

**B. Analysis – Scope and Enforceability of Arbitration Agreement**

Once the moving party has shown the existence of a valid agreement to arbitrate, the party resisting arbitration bears the burden of proving the dispute does not fall within the scope of the arbitration provision, *see Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000), bearing in mind that doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

The arbitration agreement within the MSA provides that "[t]he arbitrator rules on all issues except that a court has exclusive authority: (i) to decide arbitrability, as well as formation, existence, scope, validity, and enforceability of this arbitration agreement[.]" Scari Decl. Ex. A § 15(d). Therefore, any issues regarding the scope, validity, and enforceability of the MSA are committed to the purview of the Court.

As noted above, the MSA provides for arbitration of a broad scope of disputes: "'[D]ispute'

is defined as broad as it can be. It includes any claim or controversy between you and us concerning the Services, the software related to the Services, the Services or software's price, your Microsoft account, marketing, communications, your purchase transaction, billing, or these Terms, under any legal theory including contract, warranty, tort, statute, or regulation, except disputes relating to the enforcement or validity of your, your licensors', our, or our licensors' intellectual property rights." Scari Decl. Ex. A § 15(a). The arbitration provision encompasses the present litigation regarding Plaintiff's use and continued use of Defendants' products at issue. *Id.*; Bhimani Decl. ¶ 3; (Doc. 1-1 ¶¶ 56-61).

Plaintiff's argument that the MSA is unenforceable as a contract of adhesion is unconvincing. That the arbitration agreement within the MSA purportedly fits the definition of a "take-it-or-leave-it-contract" is refuted by the fact that the MSA provides for an opt-out mechanism permitting a user to reject changes to the arbitration agreement by mailing a signed notice to Microsoft within 30 days of any change. *Cf. Armendariz v. Foundation Health Psychcare Serv.*, 24 Cal. 4th 83, 112 (2000) (noting that a contract of adhesion "relegates to the subscribing party only the opportunity to adhere to the contract or reject it."). Here, there is no evidence that Plaintiff elected to out-opt of future changes to the arbitration agreement any time after he created his account. Scari Decl. Ex. A § 15(f).

Additionally, Plaintiff fails to show that he acted "under duress" or that the MSA is unenforceable as procedurally or substantively unconscionable, notwithstanding his argument that he was required to "click accept without any meaningful understanding of the legal consequences" of agreeing to the MSA when he created his Microsoft and Xbox accounts. As described above, a user creating a Microsoft Account and a related Xbox account is informed by text that choosing to create the account "means that you agree to the [MSA,]" which is distinguished in a hyperlinked, blue-colored font that displays the full MSA once clicked, and opens up to a hyperlink to the arbitration provision at Section 15. Scari Decl. Ex. A § 15. "All things being equal, these warnings provided [Plaintiff] with sufficiently conspicuous notice to bind [him] to the arbitration provision when [he] registered" to Microsoft's services. *Williams*, 811 F. Supp. at 1083-84 (finding similar pop-up "plain and obvious" where it embedded a hyperlink to the agreement that, when clicked,

displayed the agreement's terms that "plainly and conspicuously mention the arbitration provision again in bold and with a hyperlink to the relevant section.") (citing *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 936 (2022)); *N.A. v. Nintendo of Am. Inc.*, No. 23-cv-02424-DMR, 2023 WL 8587628, at *2, 4-5 (N.D. Cal. Dec. 11, 2023) ("minor plaintiff validly agreed to arbitration by affirmatively checking a box to accept a user agreement containing an arbitration provision, despite plaintiff's claim that he did not remember doing so")). Moreover, Plaintiff fails to cite any remotely analogous authority for the proposition that the arbitration provision is substantively unconscionable because the provision includes a forum-selection clause and requires arbitration through the AAA. *Cf. Tompkins v. 23and Me, Inc.*, 840 F.3d 1016, 1029 (9th Cir. 2016) (finding plaintiffs "have not met their burden of proving that the forum selection clause [] is unreasonable" where the forum was not "unavailable or unable to accomplish substantial justice"); *Collins v. Diamond Pet Food Processors of Cal., LLC*, No., 2:13-cv-00113-MCE-KJN, 2013 WL 1791926, at *7 (E.D. Cal. Apr. 26, 2013) ("courts generally regard the AAA rules as being 'neutral and fair.'") (quoting *Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal. App. 4th 1105, 1126–27 (1999));

Because the Court finds that a valid arbitration agreement exists and the agreement covers the claims of Plaintiff's complaint, the Court finds that Plaintiff's claims are subject to arbitration. *Chiron Corp.*, 207 F.3d at 1130 ("If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.").

**C. Request to Stay Proceedings Pending Arbitration**

Defendants Microsoft and Mojang request that the Court stay this action pending arbitration. (Doc. 18 at 20). The FAA requires that "on application of one of the parties [the Court] stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Smith*, 601 U.S. at 478 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). A trial court may grant a stay "pending resolution of independent proceedings which bear upon the case" where "it is efficient for [the court's] own docket and [is] the fairest course for the parties." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d

857, 863-64 (9th Cir. 1979).

The Court will stay the instant action pending the arbitration proceedings of Plaintiff's claims.[5]

## V. Conclusion and Order

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants Microsoft Corporation and Mojang AB's request to seal documents (Doc. 17) is GRANTED.
2. Pursuant to Local Rule 141 and based upon the representations contained in Defendants Microsoft and Mojang's notice and request (Doc. 17), the unredacted filings of Microsoft and Mojang's motion to compel arbitration and stay proceedings and the declarations of Michael Scari, Juliamarie Abbott, and Jay Bhimani in support thereof (Docs. 18, 18-1, 18-2, 18-3) shall be SEALED until further order of this Court.
3. Within five (5) days of issuance of this Order, counsel for Defendants Microsoft and Mojang shall submit a copy of this Order, the request for sealing, and the documents to be sealed (identified in par. 2, above) by email to the Operations Section of the Clerk of the Court: ApprovedSealed@caed.uscourts.gov.
4. Defendants Microsoft Corporation and Mojang AB's motion to compel arbitration and stay proceedings pending completion of the arbitration process (Doc. 18) is GRANTED.
5. This case is STAYED pending completion of arbitration.

*Remainder of This Page Intentionally Left Blank*

[5] As noted above, the Court is unpersuaded that Plaintiff would suffer "unfair prejudice" if compelled to arbitrate before the AAA. Counsel for Plaintiff's representations in his declarations regarding "unnecessary delays and opaque procedures" in his previous cases before the AAA, (Doc. 26 at 22); (Doc. 26-1, Declaration of David Langevin ("Langevin Decl.") ¶¶ 3-6), are insufficient to convince the Court to deviate from the FAA's mandate that "the court … enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130.

6. Plaintiff and Defendants Microsoft and Mojang (the "parties") are DIRECTED to submit a joint status report outlining the results of the arbitration and the need for further proceedings 90 days from the date of this order and every 90 days thereafter or within 30 days of the completion of arbitration, whichever is sooner.

IT IS SO ORDERED.

Dated: **November 13, 2026**

UNITED STATES MAGISTRATE JUDGE