UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ETHAN RODRIGUEZ,

Plaintiff,

v.

MICROSOFT CORPORATION, *et al.*,

Defendants.

Case No. 1:26-cv-01557-CDB

ORDER GRANTING DEFENDANT EPIC GAMES, INC.'S REQUEST TO SEAL DOCUMENTS

(Doc. 19)

ORDER GRANTING DEFENDANT EPIC GAMES, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

(Doc. 20)

**5-Day Deadline**

Pending before the Court is the motion of Defendant Epic Games, Inc. ("Epic") to compel arbitration and stay proceedings or, in the alternative, to transfer to the Eastern District of North Carolina and notice of request to seal documents in support thereof, filed on June 12, 2026.[1] (Docs. 19, 20). Plaintiff Ethan Rodriguez ("Plaintiff") filed an opposition on June 25, 2026, and Epic filed its reply on July 13, 2026. (Docs. 27, 32). On July 10, 2026, the Court deemed the motion suitable for disposition without hearing or oral argument and vacated the motion hearing set for July 17, 2026. (Doc. 30). For the reasons set forth herein, the Court will grant Defendant Epic's motion to compel arbitration and stay proceedings.

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Christopher D. Baker for all purposes. (Doc. 13).

# I. Relevant Background

## A. Factual Background

Plaintiff initiated this action with the filing of a complaint in state court on January 21, 2026, against Defendants Microsoft Corporation ("Microsoft"), Mojang AB[2] ("Mojang"), and Epic (collectively, "Defendants") before Microsoft removed the case to this Court on February 23, 2026.[3] (Doc. 1).

Plaintiff began playing Defendants' video game products when he was about 12 years of age and has used and/or continues to use Defendants' products "at an increasing, uncontrollable, compulsive, and/or addictive pace." (Doc. 1-1 ¶ 11). Plaintiff seeks damages, alleging that his video game addiction from use of Defendants' video game products has resulted in mental, physical, and economic injuries, "including diminished social interactions, lack of interest in other hobbies, withdrawal symptoms such as rage, anger, and physical outbursts." *Id.* ¶¶ 4-9. Plaintiff alleges that Defendants' video games have addictive features, that Defendants failed to warn users of the known risks of addiction and harm associated with their video games, and that Defendants engage in misrepresentations regarding the safety of the video games. *See id.* ¶¶ 84-99, 111-21, 151-218.

Plaintiff alleges he "never entered into a valid contract with any of the Defendants, and/or to the extent any Defendant claims [he] attempted to accept an electronic terms and condition clause by clicking buttons on a screen which included language Plaintiff did not understand, read, or which was conscionable, it has been made void by virtue of its unconscionability." *Id.* ¶ 59. He further alleges that "to the extent that any Defendant claims Plaintiff entered into a contract, any terms to which Plaintiff agreed are void and unenforceable. Each Defendant's terms of service or terms and conditions clauses are contracts of adhesion and have no variation or negotiable terms prior to the signing of parties." *Id.* ¶ 60.

Plaintiff asserts claims for strict product liability, negligence, and violations of California's

---

[2] Mojang AB was erroneously sued as Mojang Studios. *See* (Doc. 18 at 2).

[3] Microsoft and Mojang filed a pending motion to compel arbitration and stay proceedings, which the Court will address by separate order. (Doc. 18).

Unfair Competition Law ("UCL") against Defendants. *Id.* at 37-64.

**B. End User License Agreement and Epic Terms of Service**

To play *Fortnite*, Epic required a user to create an account with Epic and agree to its End User License Agreement ("EULA") prior to November 28, 2025, and to the Epic Terms of Service ("TOS") from that date. (Doc. 20-1, Declaration of Joshua D. Shaw ("Shaw Decl.") ¶ 32). Users were advised in both the EULA and the TOS that Epic may update the agreement at any time. *Id.* ¶ 39. Since March 2019, all versions of the EULA and TOS have included a requirement to arbitrate disputes arising from gameplay. *Id.* ¶ 36.

Each time Epic updated either the EULA or the TOS to accept, a user, after logging in with their username and password, no matter the device or platform used, was prompted with a scrollable text box containing the updated terms in bold, capitalized text: "**THIS AGREEMENT CONTAINS A BINDING, INDIVIDUAL ARBITRATION AND CLASS ACTION WAIVER PROVISION** …. **YOU HAVE A TIME-LIMITED RIGHT TO OPT OUT**[.]" *See id.* ¶¶ 34, 37. A user is required to click an "Accept" button underneath the scrollable text box in order to play *Fortnite*. *Id.* ¶¶ 34, 35. A user also has the option to click a button to "Decline" the terms such that the user would be unable to launch the software and play *Fortnite*. *Id.* The TOS stated that "[b]y accepting these Terms, you (& your parent/guardian) agree to abide by these rules, including … arbitration of disputes[.]" *Id.* ¶ 34.

The arbitration terms appear in Section 17 of the Epic TOS in bold-faced, italicized type: "***PLEASE READ THIS SECTION CAREFULLY*** ... ***IT AFFECTS YOUR RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT***. ... ***THERE IS NO JUDGE OR JURY IN ARBITRATION, AND DISCOVERY PROCEDURES AND APPELLATE RIGHTS ARE MORE LIMITED THAN IN COURT***." Shaw Decl. Ex. 1 § 17. The arbitration provision "appl[ies] to all Disputes between you and Epic." *Id.* Ex. 1 § 17(b) & ¶ 44. "Dispute" is defined in the TOS:

> any dispute, claim or controversy (excluding those exceptions listed below), whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, that relates to any Licensed Product or the Licensed Products generally, your use or attempted use of a Licensed Product, or these Terms, including the validity, enforceability, or scope of this agreement to arbitrate or any portion of it.

> In Disputes involving minors, Disputes asserted both by the minors and/or by the minor's or minors' parent(s) or guardian(s) are subject to this agreement to arbitrate, and the use of "you" in this Section means both the Adult and the minor(s).

*See id.* *Fortnite* is included within the definition of "Licensed Products." *Id.* Ex. 1 § 1.

The TOS provides that disputes are to be resolved in arbitration before National Arbitration and Mediation ("NAM") pursuant to NAM's Comprehensive Dispute Resolution Rules and Procedures. *Id.* ¶ 45 & Ex. 1 § 17(e). Section 17(a) of the TOS provides a user with the right to opt-out of the arbitration requirement by sending written notice to Epic within 30 days of a user's first acceptance of the EUA or the TOS containing the arbitration requirement. *Id.* ¶ 49.

## II. <u>Governing Authority</u>

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce and "governs the allocation of authority between courts and arbitrators." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); 9 U.S.C. § 2. The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "create[s] a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA establishes "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp v. Lewis*, 584 U.S. 497, 505 (2018) (quotation and citation omitted); *see Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (Congress enacted the FAA "to replace judicial indisposition to arbitration"). A party seeking to enforce an arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

A court may grant a motion to compel arbitration only upon resolution of two "gateway" questions: (1) "whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207

F.3d 1126, 1130 (9th Cir. 2000).

Because the FAA "is phrased in mandatory terms," "the standard for demonstrating arbitrability is not a high one, [and] a district court has little discretion to deny an arbitration motion." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). Still, a court may compel arbitration only when there is a "clear agreement" to arbitrate between the parties. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092–93 (9th Cir. 2014) (citations omitted). "When determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that govern contract formation." (*Id.* at 1093) (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)). "If the court finds a valid arbitration agreement exists, the court must order the parties to proceed to arbitration in accordance with the terms of the agreement." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024) (internal citation and quotation omitted).

Gateway issues such as validity and arbitrability may be delegated to the arbitrator. *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010)); *Bennett v. Anheuser-Busch Commercial Stratefy, LLC,* No. 2:22-cv-01239-MCE-KJN, 2024 WL 1241916, at *4 (E.D. Cal. Mar. 22, 2024). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. As a result, arbitration should only be denied when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

It is well-established that "arbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1011 (9th Cir. 2004). However, the presumption in favor of arbitration applies only when determining the scope of arbitrable *issues* but not which *parties* agreed to arbitrate. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995) (holding the presumption for arbitration "reverses" when determining whether certain parties are subject to arbitration in cases of "silence or ambiguity"). "Courts should not assume that the parties agreed to arbitrate arbitrability unless

there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Kaplan*, 514 U.S. at 939 (internal quotation and citation omitted).

In evaluating a motion to compel arbitration, the district court must apply the summary judgment standard outlined in Federal Rule of Civil Procedure 56. *See Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831 (9th Cir. 2022); *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). "The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen*, 1 F.4th at 670 (citation omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the existence of an arbitration agreement. *Prostek v. Lincare Inc.*, 662 F. Supp. 3d 1100, 1110 (E.D. Cal. 2023).

"When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024) (citing 9 U.S.C. § 3) (providing that, when any issue in a suit is subject to arbitration, the court shall stay the action upon request by a party until arbitration is completed).

## III. <u>Notice of Request to Seal Documents</u>

Defendant Epic requests[4] the Court seal documents filed in connection with its motion to compel arbitration and stay proceedings (Doc. 19), filed and emailed to the undersigned's chambers on June 12, 2026, along with a proposed order and the documents sought to be sealed. Epic requests the Court seal unredacted copies of the following documents: (1) its memorandum of law in support of its motion to compel arbitration and stay proceedings or, in the alternative, to transfer venue; (2) the declaration of Joshua D. Shaw in support thereof; and (3) certain supporting exhibits. (Doc. 19 at 2). Epic represents that these documents contain sensitive personal information associated with Plaintiff's Epic Games account, including his email addresses, usernames, and full account identification numbers. *Id.*

---

[4] Plaintiff consents to the request to seal. *See* (Doc. 19 at 2).

The Court has considered the factors set forth in *Oregonian Publ'g Co. v. U.S. Dist. Court for Dist. of Or.*, 920 F.2d 1462 (9th Cir. 1990). The Court finds that, for the reasons stated in Epic's request, sealing the documents serves a compelling interest and that, in the absence of closure, the compelling interests would be harmed. In light of the public filing of the redacted documents (*see* Docs. 20; 20-1; 20-8; 20-9), the Court further finds that there are no additional alternatives to sealing the documents that would adequately protect the compelling interests.

Accordingly, pursuant to Local Rule 141 and based upon the representations contained in Defendant Epic's unopposed notice and request (Doc. 19), the Court will order that the unredacted filings of Epic's motion to compel arbitration and stay proceedings, the declaration of Joshua D. Shaw in support thereof and the supporting exhibits (Docs. 20-1; 20-8; 20-9) thereto shall be sealed until further order of this Court.

## IV. <u>Discussion</u>

Defendant Epic moves under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, for an order compelling arbitration of Plaintiff's disputes with Epic and staying this action pending completion of the arbitration. (Doc. 20 at 2). Epic contends Plaintiff contractually agreed to arbitrate his disputes with Epic when he established an account to play Epic's *Fortnite*, requiring arbitration of all disputes arising from gameplay and expressly delegates all disputes over the validity, enforceability, and scope of the arbitration agreement to the arbitrator. *Id.* Epic argues that pursuant to this delegation, the Court should not address any disputes over whether Plaintiff's claims are arbitrable. *Id.*

Plaintiff argues that compelling arbitration in this case would be improper because the parties do not have a valid, enforceable arbitration agreement, and even if one does exist, it is unenforceable as it is procedurally and substantively unconscionable. (Doc. 27 at 7). Plaintiff contends that no agreement exists because (1) the contract is voidable given Plaintiff lacked capacity as a minor to agree to the EULA or TOS, and (2) the contract is unconscionable because he was required to accept the updated terms of the EULA/TOS based on the duress of his video game addiction after he reached majority-age. *Id.* at 12-14. Plaintiff further asserts that his claims are outside the scope of the EULA/TOS based on the same unconscionability arguments and

because the contract is a contract of adhesion. *Id.* at 14-22.

Epic contends in reply that Plaintiff's opposition confirms he created an account and agreed to the EULA and TOS to access and play *Fortnite* such that contract formation is not in dispute. (Doc. 32 at 2).

The parties do not contest the FAA's applicability over the arbitration agreement at issue here. *See* (Doc. 20 at 15); (Doc. 27 at 15) ("The enforceability of Epic's arbitration agreement … must be evaluated under the [FAA.]"). Therefore, the Court follows the FAA's two-step inquiry in ruling on Epic's motion to compel arbitration and stay the proceedings.

**A. Analysis – Validity of Arbitration Agreement**

First, in determining whether to grant Epic's motion to compel arbitration, the Court considers the initial "gateway" question—whether there is an agreement to arbitrate between the parties. *Brennan*, 796 F.3d at 1130. "When determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that govern contract formation." *Davis*, 755 F.3d at 1093 (citation omitted). Here, the parties do not dispute that California law governs the contracts at issue. *See* (Doc. 20 at 9, 20); (Doc. 27 at 11). To form a contract under California law, the parties must mutually assent to the terms of the agreement. *Berman*, 30 F.4th at 855. "Section 6700 of the California Family Code permits a minor to make a contract 'in the same manner as an adult,' subject to the power of disaffirmance and other exceptions that do not apply in this case." *Williams v. Moon Active Ltd.*, 811 F. Supp. 3d 1079, 1083 (N.D. Cal. 2025) (citing Cal. Fam. Code § 6700).

Here, Epic shows that Plaintiff created the user account at issue—through the account-creation process explained *supra* (Section I.B)—on May 9, 2019, and used for the first time to access *Fortnite* on February 5, 2020, prior to reaching the age of majority in 2024, and has used the account since to play *Fortnite*. *See* Shaw Decl. ¶¶ 56, 60. Plaintiff agreed to arbitrate his claims with Epic thereafter five times, including most recently as December 4, 2025, when he accepted the TOS. *Id.* ¶¶ 59-69, 70. Further, Epic shows that Plaintiff has continued to play *Fortnite* since Plaintiff filed his complaint. *Id.* ¶ 72. There is no indication Plaintiff exercised his right to out-out of the arbitration agreement of the December 4, 2025, TOS within the time permitted. *Id.* ¶ 73. Plaintiff does not dispute that he continues to play video games with his user account after he

reached majority-age in 2024, and following the filing of his complaint in January 2026. *See* (Doc. 1-1 at 5 ¶ 11) ("Plaintiff has used and/or continues to use Defendants' Products[.]"). The evidence indicates that a valid agreement to arbitrate exists. Epic has established that Plaintiff entered into an agreement to arbitrate disputes regarding Epic's products.

Plaintiff's argument that the contract is invalid because he was a minor when he entered agreement to arbitrate is unavailing. Plaintiff may "have been a minor when he entered the agreement to arbitrate for the first time, but … he was an adult when he reaffirmed the agreement" on later occasions. *Compton v. Sony Ent. Interactive LLC*, No. 1:26-cv-04076-KES-EGC, 2026 WL 3169643, at *2 n.3 (E.D. Cal. Oct. 22, 2026); *see id.* ("If Compton reaffirmed the arbitration agreement after becoming an adult that could establish his ratification of the agreement.") (citing *Coughenour v. Del Taco, LLC*, 271 Cal. Rptr. 3d 602, 608 (Cal. Ct. App. 2020)). Although a minor may disaffirm a contract he entered into before reaching majority-age or within a reasonable time afterwards (Doc. 27 at 12), Plaintiff offers no substantive argument or facts demonstrating that he in fact lawfully disaffirmed the MSA when he was a minor, after he reached majority age in 2024, or after he filed his complaint in January 2026. *Cf. Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1037-38 (N.D. Cal. 2020) (finding minor-plaintiff validly disaffirmed agreement to arbitrate by sending a letter to the video game creator asserting the minor's right to disaffirm contracts, by filing a complaint seeking declaratory judgment regarding his right to disaffirm the contract and conveying intent to repudiate the contract, and because "plaintiff has disaffirmed the EULAs in their entirety, including by not playing *Fortnite*."); *T. K. v. Adobe Sys. Inc.*, No. 17-CV-04595-LHK, 2018 WL 1812200, at *6 (N.D. Cal. Apr. 17, 2018) ("T.K. has disaffirmed the entire renewal agreement. There is ... no evidence that T.K. continues to use ACCP …. In these circumstances, the Court sees no basis to enforce the arbitration … terms of a contract that is now a 'nullity.'"); *R.A. v. Epic Games, Inc.*, No. CV 19-1488-GW-Ex, 2019 WL 6792801, at *7 (C.D. Cal. July 30, 2019) (finding although plaintiff continued to play *Fortnite* after filing he complaint, plaintiff disaffirmed agreement to arbitrate by submitting a declaration conveying his disaffirmance and there was no evidence he continued playing *Fortnite* after submitting the declaration). Indeed, Plaintiff's continued use of his Epic user account following the filing of his complaint demonstrates

his manifestation of his intent *not* to disaffirm the contract. *See, e.g.*, *C.M.D. ex rel. v. De Young v. Facebook, Inc.*, 621 Fed. Appx. 488, 489 (9th Cir. 2015) ("Plaintiffs did not disaffirm their contract under § 6710…. By continuing to use facebook.com after bringing their action, Plaintiffs manifested an intention not to disaffirm the contract."); *Y.H. v. Blizzard Ent., Inc.*, No. 30-2022-01257732-CU-BT-CXC, 2025 WL 1331952, at *6 (Super. Ct. Cal. May 1, 2025) ("While the 'filing of a lawsuit is sufficient disaffirmance' … Y.H.'s continued use of Blizzard accounts while this action has been pending, including her creation and use of a new account to play *Overwatch 2* while litigating her claimed disaffirmance, manifests an intention not to disaffirm the EULA."). Therefore, Plaintiff's arguments regarding disaffirmance fail to show an agreement to arbitrate does not exist here.

Plaintiff's argument that the contract is voidable because he entered into the TOS while he was a minor, became addicted to Epic's services, and was therefore under duress when he reached majority-age is not persuasive. To begin with, a "voidable" contract is not void, but rather, permits disaffirmance (which did not occur here). Separately, Plaintiff cites no cases and no other authority that gaming addiction acquired prior to reaching majority-age constitutes duress sufficient to void a contract.

Thus, the Court finds that a valid agreement to arbitrate exists between the parties. *Brennan*, 796 F.3d at 1130. The Court turns to whether the arbitration agreement is enforceable as to Plaintiff's claims. *Id.*

**B. Analysis – Scope and Enforceability of Arbitration Agreement**

Once the moving party has shown the existence of a valid agreement to arbitrate, the party resisting arbitration bears the burden of proving the dispute does not fall within the scope of the arbitration provision, *see Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000), bearing in mind that doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

Because the Court has found that the parties formed a valid arbitration agreement, the next issue to resolve is whether that agreement commits the parties to delegate the issue of scope to the arbitrator. As discussed above, gateway issues, including scope, may be delegated to the arbitrator.

*See, e.g.*, *Bennett*, 2024 WL 1241916, at *4. The arbitration agreement at issue provides that disputes are to be resolved in arbitration before NAM. *See* Shaw Decl. ¶ 45 & Ex. 1 § 17(e). The arbitration agreement also appears to delegate issues of arbitrability and scope to the arbitrator. *See* Ex. 1 § 17(b) ("The … Binding Individual Arbitration requirements in this Section apply to all Disputes between you and Epic … including the validity, enforceability, or scope of this agreement to arbitrate or any portion of it.").

"When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). If the contract "clear[ly] and unmistakab[ly]" delegates this question to the arbitrator, . . . a court may not override the contract[.] In those circumstances, a court possesses no power to decide the arbitrability issue." *Silverman v. Move Inc.*, No. 18-cv-05919-BLF, 2019 WL 2579343, at *8 (N.D. Cal., June 24, 2019) (citing *Henry Schein, Inc.*, 586 U.S. at 68). *See Rent-A-Center*, 561 U.S. at 72 (where express delegation clause exists, unless a party opposing enforcement of the agreement specifically challenges the delegation clause, courts must treat it as valid).

Consistent with these authorities, the Court finds that Plaintiff's claims, including his challenges as to the validity, enforceability, and scope of the arbitration agreement—based on addiction, duress, and unconscionability—are subject to arbitration and proper for resolution before the arbitrator, not the Court. *Williams*, 811 F. Supp. at 1084 ("The Supreme Court has held that when a contract contains a delegation clause, 'any challenge to the validity of the Agreement as a whole' is properly decided by an arbitrator.") (citing *Rent-A-Center*, 561 U.S. at 72). "Hence, if the dispute over the enforceability or validity of the contract is within the scope of an arbitration agreement, then an arbitrator should decide the issue." *Id.* (citing *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) ("[I]f the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.")).

Plaintiff's argument that the TOS is unenforceable as a contract of adhesion is unconvincing. That the arbitration agreement within the TOS purportedly fits the definition of a

"take-it-or-leave-it-contract" is refuted by the fact that the TOS provides for an opt-out mechanism as detailed above. *Cf. Armendariz v. Foundation Health Psychcare Serv.*, 24 Cal. 4th 83, 112 (2000) (noting that a contract of adhesion "relegates to the subscribing party only the opportunity to adhere to the contract or reject it."). Here, there is no evidence that Plaintiff elected to out-opt of the arbitration agreement in the time permitted to do so. *See* Shaw Decl. Ex. 1 § 17(a).

Additionally, Plaintiff fails to show that he acted "under duress" or that the TOS is unenforceable as procedurally or substantively unconscionable, notwithstanding his contention that he was required to "click accept without any meaningful understanding of the legal consequences" (Doc. 27 at 16) of agreeing to the TOS when he created his Epic user account. As described above, a user is required to click an "Accept" button of the TOS underneath the scrollable text box in order to play *Fortnite*, and "[b]y accepting these Terms, [the user] agree[s] to abide by these rules, including … arbitration of disputes[.]" *Id.* ¶¶ 34, 35. "All things being equal, these warnings provided [Plaintiff] with sufficiently conspicuous notice to bind [him] to the arbitration provision when [he] registered" to Epic's services. *Williams*, 811 F. Supp. at 1083-84 (finding similar pop-up "plain and obvious" where it embedded a hyperlink to the agreement that, when clicked, displayed the agreement's terms that "plainly and conspicuously mention the arbitration provision again in bold and with a hyperlink to the relevant section) (citing *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 936 (2022)); *N.A. v. Nintendo of Am. Inc.*, No. 23-cv-02424-DMR, 2023 WL 8587628, at *2, 4-5 (N.D. Cal. Dec. 11, 2023) ("minor plaintiff validly agreed to arbitration by affirmatively checking a box to accept a user agreement containing an arbitration provision, despite plaintiff's claim that he did not remember doing so")). Moreover, Plaintiff fails to cite any remotely analogous authority for the proposition that the arbitration provision is substantively unconscionable because the provision includes a forum-selection clause. *Cf. Tompkins v. 23and Me, Inc.*, 840 F.3d 1016, 1029 (9th Cir. 2016) (finding plaintiffs "have not met their burden of proving that the forum selection clause [] is unreasonable" where the forum was not "unavailable or unable to accomplish substantial justice").

Because the Court finds that a valid arbitration agreement exists and the agreement delegates issues of validity, enforceability, and scope of arbitrability to the arbitrator, the Court

finds that Plaintiff's claims are subject to arbitration. *Chiron Corp.*, 207 F.3d at 1130 ("If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.").

**C. Request to Stay Proceedings Pending Arbitration**

Defendant Epic requests that the Court stay this action pending arbitration. (Doc. 20 at 22). The FAA requires that "on application of one of the parties [the Court] stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Smith*, 601 U.S. at 478 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). A trial court may grant a stay "pending resolution of independent proceedings which bear upon the case" where "it is efficient for [the court's] own docket and [is] the fairest course for the parties." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).

The Court will stay the instant action pending the arbitration proceedings of Plaintiff's disputes with Epic.[5]

**V. <u>Conclusion and Order</u>**

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant Epic Games, Inc.'s request to seal documents (Doc. 19) is GRANTED.
2. Pursuant to Local Rule 141 and based upon the representations contained in Defendant Epic Games, Inc.'s notice and request (Doc. 19), the unredacted filings of Epic's motion to compel arbitration and stay proceedings, the declaration of Joshua D. Shaw in support thereof and the supporting exhibits (Docs. 20-1; 20-8; 20-9) shall be SEALED until further order of this Court.
3. Within five (5) days of issuance of this Order, counsel for Defendant Epic Games, Inc., shall submit a copy of this Order, the request for sealing, and the documents to be sealed (identified in par. 2, above) by email to the Operations Section of the Clerk of the Court: ApprovedSealed@caed.uscourts.gov.

---

[5] Because the Court grants Epic's motion to compel arbitration and stay proceedings, the Court need not reach Epic's alternative argument that any non-arbitrable claims be transferred to the Eastern District of North Carolina. (Doc. 20 at 22-25); *Compton*, 2026 WL 3169643, at *2.

4. Defendant Epic Games, Inc.'s motion to compel arbitration and stay proceedings pending completion of the arbitration process (Doc. 20) is GRANTED.
5. This case is STAYED pending completion of arbitration.
6. Plaintiff and Defendant Epic Games, Inc. (the "parties") are DIRECTED to submit a joint status report outlining the results of the arbitration and the need for further proceedings 90 days from the date of this order and every 90 days thereafter or within 30 days of the completion of arbitration, whichever is sooner.

IT IS SO ORDERED.

Dated: **November 13, 2026**

UNITED STATES MAGISTRATE JUDGE